Good morning, Your Honors. May it please the Court, Angela Dows for the Appellant and Defendant Brett Depue, and I would like to reserve three minutes for rebuttal. Mr. Depue's case is really a prime example of what can go wrong when attempting to represent oneself at trial and not fully knowing the risks involved. And I am simply going to go through the argument in the order of briefing, starting with Mr. Depue's Feretta waiver, which was invalid. Even though there's no script or rigid requirements, the waiver still must be knowing and intelligent. And two of the Feretta factors in the cases following Feretta are at issue here. First, Mr. Depue was not – Depue was not made aware of the nature of the charges against him, either at the hearing on the first day of trial or the second day of trial. And there was especially no mention of – Are you talking about the first trial, or are you talking about the second trial? The first trial, Your Honor, where there was the full colloquy regarding the waiver of counsel. He got a hung jury in that first trial, right? He did, Your Honor, so it could be argued that he was emboldened for the second trial. So when the second trial started, he was pretty familiar with what the nature of the charges were, correct? Your Honor, yes, in a sense, because he had heard what the jury instructions were. Yes. Right? He had heard why – Heard the closing arguments, and he himself participated in those. Yes. Although I would – I don't really understand what the nature of the charges were. Correct, Your Honor. I would certainly still argue that, even though he had heard the jury instructions. It's not the same as the district court going through that with him on the record. So was the court obligated to do any further letter – Moretta – Moretta colloquy after the end of the first trial before you could get into the second? Insofar as – yes, insofar as there are things missing. And I – understanding that there's no script or, you know, things that need to be followed exactly, but there's still those three things that need to be there, and two were not there in this case. Or even one. If we were somehow to say that that jury instruction was advising on the nature of the charges, we still don't know what the maximum or the range of penalties were, because that's not a part of trial. So on the – on the maximum penalty, all we know is that – is that the judge asked if you, during the colloquy, you understand the penalties, something like that. The question – and I may be misquoting this. Do you know the possible sentence answer of 30 years? And the judge said nothing further. Correct. Is there any place else in the record where there's any discussion on what the penalties are or were? Not that I can recall, Your Honor. I don't want to say no. I'd be wrong. Well, he did – he did talk about consecutive sentences. He says, don't you realize that you can be sentenced consecutively on charges? The other thing is he had a standby counsel. You always wonder what a standby counsel does. In this particular case, the standby counsel said he was not going to stand up and take over the trial. He was fine. He screwed it up too badly. He decided to change his mind. The standby counsel is still there to give advice. We don't know what standby counsel told him about his possible penalties, correct? Correct. Okay. And he said to himself that he looked at the sentencing guidelines. What are we missing? And he says, I can represent myself. I've talked to my lawyer. I've read the guidelines. It's 30 years. It could well be that he's talking about that that's a possible range of sentences of practical matter. Just about everybody that's represented by a lawyer, I think, says, what am I looking at? 30 years. We could be better with advice than 30 years. That was the top penalty, 30 years plus 20 years plus 20 years. And I would – do you want to address a few of the things? Well, there's a lot there, but I've got the record. I do. Yes. The district court did immediately ask a question. He realized that there's concurrent and consecutive possibilities that I could sentence him, but he said yes immediately after that. About standby counsel, there is – the record also reflects that Mr. DePuy did not speak with his standby counsel for approximately two years and had one meeting with him almost immediately before trial. And, yes, it is true that a lot of – one of the very first questions a lot of VQs for defendants ask is, what am I looking at? Because that's really one of the paramount issues in any case. But there's no evidence that there was that actual discussion, or if so, it's not on the record. And, you know, one could argue with limited communications with his own attorney, how could that discussion have taken place? So it's contrary to, I believe, Lopez-Ostuna. There's – part of the holding is there was limited counsel that was advising this client throughout the process. So that's part of the analysis, that there was a valid waiver. But there's just not indication of that here. Does that answer Your Honor's question? I'm so sorry. You mean the extent to which the standby counsel actually gave some assistance? In the sense that what – there's really no indication of what was discussed as far as the factors under FRERDA and the cases following it. So I can't stand here and say that that discussion was had, which – and that means that he didn't validly, you know, invoke the right to represent himself and wasn't properly advised before he did. All this colloquy, I think, demonstrates that there was a FRERDA error. It was only a technical error. It was a very minor error. But assuming we conclude there was error in this kind of case, is it subject to harm of service? No, Your Honor. Because of the importance of counsel, I believe the Forrester case talks about that. And even if there was overwhelming evidence against him, and even if this case was tried again and we went through the colloquy with the client and he said, I want to represent myself again, we can't look at it like that. It's not harmless. Because it is an important right under the Sixth Amendment to be represented by counsel or represent yourself. Those two choices are very important. So, you know, I would disagree that it's a technical thing, because those are really important advisements that need to be had on the record. And, you know, it appeared as if, you know, the response was, I understand. So one could say, okay, he understood, right, that he was just reading it. He says, I understand. But there's no matching up with what exactly he understood in response to a question, right? The charges themselves were not matched up with subsequent responses of I understand. So those steps are missing. And this is similar to Forrester, too, where the defendant enforcer said over and over, I understand. I'm competent. I wish to proceed. But that was not found to be a valid waiver either under the nature of the charges part of it. Briefly, under the maximum penalties, the difference does matter, even if Mr. DePute overstated what he thought he was facing. And he didn't know exactly what he was facing until the time of sentencing, many months after he was actually convicted, and couldn't in some ways appreciate the differences. And maybe his strategy would have been different had he known that the conspiracy charge and a couple of the wire fraud charges were 30 years versus 20. Maybe he would have changed his strategy to really go after only those 30 years. Charges to save himself 10 years if it was a concurrent sentence. We just don't know because he wasn't advised at the time. Well, we don't know. It's not on the record that he was advised. We really don't know. It's a conversation. Yes, Your Honor, and that is part of the difficulty, too. I agree. If you may have ---- What does our case law say about looking through the fact that a defendant who went pro se is assisted by an ambush? Your Honor, there is ---- Does that take care of any ---- The Lopez Osuna case used to suggest that, where in that case there were several hearings before the waiver happened, and there was a mention of that he was assisted throughout. In Lopez Osuna, the client was assisted throughout by a competent counsel. We just don't have that here because, on the record, it does say that Mr. DePue and his attorney did not communicate for something like two years and one time before trial, that one conversation before trial. It would strain reasonable arguments that he would somehow be advised of everything possible, including how we're going to prepare for trial in a few days or whatever. I forget the exact time before trial, but it was one meeting in two years. For the record, just fairness to the lawyer, it was not the lawyer's fault for not getting in touch with him. I think that DePue said, you know, this is the response. Yes. It had nothing to do with this argument. It was just out of fairness right here to his counsel. His counsel tried to get a hold of him. Yes, and this particular counsel has been practicing for many years and is an excellent defense counsel, in my opinion. But, yes, in fairness to him and to the counsel, yes. Your Honor, I would like to move to the crime exception, if I could. The testimony and letter of Mr. Adams was read into the case. It does not fall under the crime product exception. It was not in furtherance of anything. There's a Bower case that talks about – I'm arguing that it's akin to the Bower case where a person went to his bankruptcy counsel and signed off on a bankruptcy filing. Here's all of the assets that I have. And the attorney advised him, well, make sure it's all the assets you have because if you hide something, then you'll be responsible. And it turned out that he did hide things. So the client did not follow this counsel's advice. I know you're arguing crime product exception, but why do we even have to get to that? Didn't he just wave it, wave the drink on the girl? He had her on his desk. That's what his former lawyer told him. What was his former lawyer's name? Adams, Mr. Adams. Right. The civil attorney or former attorney was Mr. Adams. And I was struggling with his waiver issue, Your Honor, admittedly, because the ruling by the district court seems to contradict the – the ruling was that there was waiver of attorney-client privilege as well as a crime product exception. But how can the exception of crime product apply when it's already been waived, right? They seem to be conflicting rulings. If anything, if there was a waiver, the waiver is certainly limited to the subjects where a waiver happened during Mr. DePue's testimony. The limited subjects were never use addendums again, buying cash, straw buyer, and a lease with option of buyback, those limited issues. And certainly the testimony of Mr. Adams went far beyond that at trial. He was talking about what materiality means. Strawberries, yes. He was asked to find what conspiracy is. He was shown HUD-1 statements and given certain different hypotheticals to look at. So it went far beyond even the scope of the waiver if there was any and took over the jury's function. And, Your Honor, I do have about two minutes remaining. Okay. All right. May it please the Court. I'm Camille Dionne for the United States. One thing that I do agree with, counsel started out by saying this is a prime example of what can go wrong with self-representation. I do agree with that, and usually it does go wrong. And DePue was advised of that. And the fact that it went wrong in terms of the result, as Your Honors are well aware, is not relevant to the analysis. What we're here to determine is whether he made a choice with his eyes open and knowing what he was doing. And I submit that the record clearly represents that he did or shows that he did. You know, when I read the district court's colloquy at the beginning of the first one, it does do a pretty detailed question. You know, the consequences of going dangerous in this case. Yes. Judge Johnson? Yes. You seem to be pretty careful in that. But I don't mean to be critical. Our case law is pretty clear that it reports to that colloquy. One is understanding, making sure the defendant understands the danger. Correct. The nature of it. Correct. And here Judge Hunt really doesn't go over the nature of the charges at all.  He does, yes. He doesn't go down, he doesn't go through one of them. And then when it comes to the penalties, he just asks Mr. DePue, do you understand the nature of the punishment? I mean, do you know what the possible sentence can be if you're found guilty of these crimes? Thirty years. Well. I mean, that's not what – if one were to take a look at our case law, that's not the kind of colloquy you would expect to see. You know, this happened on the first day of trial. It wasn't something that there had been a prior motion, and I think that Judge Hunt did a fairly decent job of giving him the advice. But we have to also remember that the focus is on what the defendant knew, not what the judge said or how he said it. And I think in this case, the record makes clear that DePue understood the nature of the charges. Well, it's kind of a two-way street. Well, yes, the Court had an obligation to advise him, but the Court started saying The Court had to make a finding that his waiver was knowing and intelligent. Yes, and he felt that it was at the time. And at the time that he made the ruling, DePue said, when asked about, Do you know what the charge – do you understand the charges? He said, Yes, I know all about it. I've been preparing my defense for two years. I've discussed theories with my attorney. I went through the case in court on my first hearing. DePue's attorney told him he had been in constant email communication with him. This defendant was well aware of the charges and it was shown throughout the trial and had a great desire to represent himself, which obviously, I think, obviously bears repeating that the right to represent himself merited the same vigilant protection as any other constitutional right, the same protection as the right to have counsel. And he's also granted the right to make his own defense. And I think that it was rightly done in this case. And if there was any question about whether he understood his rights at the time of the first trial, there can be none at the time of the second trial. And after that hung jury and before the second trial, Judge Hunt again asked him, as was asked throughout the trial, it was brought up several times throughout the trial, Are you sure you still want to represent yourself? In fact, the attorney filed a motion and there was a big hearing about that because DePue hadn't signed the motion. Are you sure you want to keep representing yourself? And you'll let us know if you don't understand. And at the end, he said, Yes, I still want to represent myself and I would appreciate still having standby counsel. Maybe that was right at the end of the first trial. Yes, right at the end of the first trial. No, he just got hung. He just got hung. Happens. It happens. It happens. So as to the – I don't see a question as to the nature of the charges. And as to the – Look, I think as I – as I look at the total record, first trial, second trial, it's hard pressed to say that when the second trial started that he didn't understand. He had an hour and a half in chambers. Having just participated in a full trial. You know, jury instruction settlement, you know. But as far as the penalty goes, I think that he was correctly advised of that, too, basically, because he said, Do you know the penalty? Yes, 30 years. And as Judge Quist pointed out, he did say, Do you know that those can run consecutively? And he said, I am aware of that. So – Well, you know, it's more ambiguous than that. You don't know whether he meant the total of 30 years or 30 years on the highest count. I think that was the penalty on the highest count. I didn't read it as that ambiguous because after the court said, Do you know the penalty? He said 30 years. The court followed up with, And do you know the counts can run consecutively? And then he said, Yes. So to me, it implies that it would be more than 30 years. But I don't think that there was – it's totally different than the Forrester case. There wasn't a material misstatement of the sentence. And obviously, Forrester was also based on the fact that Forrester wasn't advised of the charges, and on that total record, they had to remand. But given a pragmatic approach and looking at, Do you know the penalty? He knew the penalty. And actually, you know, no one knows what it's going to ultimately be before trial, depending on how the evidence comes in or the counts or the sentencing guidelines. He knew that the maximum possible sentence was 30 years, and the counts could run consecutively to aggregate that. And I think that's correct. And actually, if you look at the judgment and conviction, he was sentenced to over 20 years on two of the wire fraud counts, because the wire fraud statute includes a penalty for 20 years and for 30 years, depending on whether it's proven that a bank or a federal insured bank was affected. So he was properly advised. So how do you want to – so how do we get around Forrester? How do you get around Forrester? Yeah. Okay. Forrester, there was – Tell me how – tell me. Forrester was given an incorrect material misstatement as to what the sentence was. The judge told him an erroneous statement. The Court did not apprise Forrester of the charges. The government could not point to anything in the record to show that Forrester was aware of the nature of the charges. Forrester went through three additional arraignments where he was not – Well, it looks like the concern here is the punishment. And there was no indication – So here – so your first point – your first point was that he was affirmatively  Right. In Forrester, he was affirmatively misled by the Court. Exactly. And – And here, the Court said nothing, just other, do you understand – Right. Do you understand what the punishment is? And Forrester didn't have stand-by counsel as well, which is something that is a factor that can be considered in – if the Court were to find – the question was asked of whether there's a harmless error review. If the Court were to find that there was error in this record such that DePue did not know what he was doing, and then there's not a harmless review for that. Right. It's just reversed. Right. Right. And we agree with that. But – The government brought that up during the – at one point when the judge was a little bit confusing in his remarks about whether DePue would be able to stand up and argue Exactly. That's why the government was really trying to get the record right. Yes. Yes. Yes. We're in that record. Maybe, if you haven't made this clear, the stand-by counsel is not still relevant. That's just being a judge, even though the person's way over here. In other words, the stand-by counsel would help him by passing on – he even got a jury consulted. Right. And the stand-by counsel was not now advising the jury consultant. I don't know. Maybe it's a malpractice case instead of a violation. I don't know of a case – Well, you just hear what your colleagues say. I don't know of a case that says that. But the cases do say stand-by counsel is a factor to be considered, and the record does give the inference that stand-by counsel had advised him of the penalties because he knew what they were. He said he went over it all, including guidelines, at his first hearing, and it's clear that he was aware. And I'm sure stand-by counsel was partly, along with Forrester's own research – or, I mean, Dufus's own research, I guess. But I think stand-by counsel did perform that function. I don't recall that particular case. I don't either. Yeah, I don't recall. Could you put me to the record where stand-by – at the hearing, if you'll call it, please, that stand-by counsel went over the guidelines, said that he went over the guidelines and all of that? I don't recall that. Maybe it's there. It's been a while, you know. We look at all these cases a while back. Except for at a hearing, the defendant said, I do understand fully. That's as far as I – let's see. Yeah, there was a place where – He said we went over it after the first hearing. Well, the colloquy I have, the court – and you understand that since you are charged with multiple offenses. This is after the first hearing. That if you're convicted of multiple offenses, that they can be – the court can order that you be served consecutively or as opposed to currently.          I don't recall. I don't recall. I don't recall. I don't recall. I don't recall. I don't understand that. Are you familiar with the sentencing guidelines? Yes, there it is. Okay. The defendant somewhat – I reviewed them when I was – the first time I was in a court and went through my cases – my case. That was it. Yeah, that's it. Okay. He doesn't say – he didn't say I went over them with my attorney. Well, that was the implication. When he said he went over his case the first time he was in court, that's what happens. There are a range of charges the attorneys come and – that's how I understood it. It doesn't want to always say that. There's – it would be – Were you trial counsel? No, I was not. We had two trial counsel, and one of them has now moved over to become a public defender. Just a note, it's not – not because of this case. It was – it was funny, though. This defendant's name is DePue, and the trial counsel's name was Brian, initial D, Pue. They got a – they got a chuckle out of that. Did you want to address any of the other issues? To the extent the court thinks it's necessary, we don't really – the prime fraud exception was fallback. The defendant waived the – actually, in court, on Adam's testimony, DePue said in court to the judge, it's okay with me if he testifies. And that's cited in my brief. And then – so there's a waiver there. And then on the – on appeal in this court, there's a waiver of the issue because it wasn't addressed, the fact that the judge primarily – his primary first ruling on the waiver was that it was waived by DePue's own testimony. And I think the court's aware of that. So I think if there aren't any more questions, I think I can yield my time. Okay. Thank you very much. Your Honors, I was going to briefly go back to the Paretta issue, unless there was something else the Court's mind. But I just wanted to point out that Gerritsen, that case, really seems like an example of what she did without suggesting that she's done it in every case. But the district court in that case had asked the prosecutor, let's use charge and the element of each charge, and then turned to the defendant and said, do you understand? And the same with the amount of punishment in that case. And this is not the rare case where the record as a whole demonstrates a valid waiver. And in the, I'm maybe mispronouncing, Fawu case, they talk about that you need to look at the background and experience of the defendant if there's going to be a record as a whole waiver. And Mr. DePue, this was his first criminal trial, no prior contacts, significant contacts with the criminal justice system. And in that case, in the cases following it, it seems to suggest, too, that even if you're a titan of industry, even if you have, if you're an engineer or really smart in different areas, it doesn't mean you're ready to be a lawyer. And also, there's a timing issue. This was a critical point. This was the first day of trial, I believe, and the second day of trial when he wanted to represent himself again. And the judge at the district court said he wasn't moving the trial. And I get that there's practical concerns and issues, too, with moving trial. And with moving the trial, it can be a difficult analysis. And then on the crime fraud exception, just moving to that briefly, perhaps it was waivers of certain areas, but I certainly would argue that the crime fraud exception cannot take over for those areas. What about the statement? Counsel referred to it when he said, Is it okay with me if he testified? He did say that, but then he backtracked a little bit later, saying, Well, I want to limit. Backtrack? Did you make the waiver? Before the court made a ruling, I would suggest yes. He seemed at least confused. He wanted to waive it, but then said, Wait, well, but I want to only be able to show that it was the letter or the communication was sent to someone else and me, which seemed to be consistent with his strategy of, Other people were doing things, not me. That seemed to be his trial strategy. Does that answer Your Honor's question? And finally, the testimony of Mr. Adams really took over the jury's function, which is, you know, it initially threw me off at the time I was reading through his transcript. Was he an expert? Because he seemed to be testifying like one. But really, it's a rules of federal rule, is that he only could testify if it was based on his personal knowledge and was going outside of those things. He was posed with hypotheticals. He was asked to define what material meant, which was one of the elements of fraud in the jury instructions. He was asking to define material, which the jury needed to define on their own without him. And he was testifying to things that were really based on his specialized knowledge. So a 702 issue when he was really a witness under 701. Please help me. Was your client also relying on advice of counsel? Defense? Talk about crime fraud, advice of counsel. Your Honor, that seemed to be a defense he was – Well, you know, knowing that if he does, then he waives the privilege. Perhaps as to the areas that he implicitly waived them on. So I would argue that the waiver, if there was a waiver. Well, not necessarily. I disagree with that. In other words, counsel can have a lot of connected and interdependent things going on. You say, I'm this event and that event and that event. Once you get into that, you say, my lawyer made me do it or said I could do it. That really opens it up to the lawyer to say, well, I said that, but I also said this. To be able to rebut that. Yes, yes. And there wasn't necessarily a ruling. It wasn't an advice of counsel defense. The best I can go off of is what the waiver was and the crime fraud exception. And it really wasn't in furtherance of anything, what his advice was. It was really don't do all of these things. And Mr. DePue apparently didn't follow some of these things. And even if, you know, Mr. Adams was qualified or testifying as an expert, even an expert cannot invade the jury's function. Over your time. Oh, I'm sorry, Your Honor. Okay. So we ask that the case be reversed. Okay. Thank you very much. We appreciate your arguments and the matters submitted. Thank you.
judges: Quist, Tashima, Paez